1
2
3
4                      UNITED STATES DISTRICT COURT
5                          DISTRICT OF NEVADA
6                                  * * *
7    VANESSA DOUGLAS,                        Case No. 2:13-cv-02326-RFB-PAL
8                    Plaintiff,              ORDER GRANTING IN PART,
                                             DENYING IN PART, MOTION TO
9         v.                                 RECONSIDER, ECF No. 111
10   JOHN E. STALMACH, *et al.*,
11                   Defendants.
12

13   **I.      Introduction**

14         This case is before the Court on Defendant Clark County School District's Motion for

15   Reconsideration, Modification, and/or Motion to Alter or Amend Judgment.

16   **II.     Background**

17         Plaintiffs Vanessa Douglas and Sandra Henderson filed their initial complaint on

18   December 23, 2013. ECF No. 1. Following several extensions of discovery, Plaintiffs filed their

19   Second Amended Complaint on August 24, 2015, which is the operative complaint in this action.

20   ECF No. 90. On September 14, 2015, Defendants Clark County School District (CCSD) and

21   Bambi M. Dewey each filed Motions for Summary Judgment. ECF Nos. 91, 94.

22         In the Second Amended Complaint, Plaintiffs Vanessa Douglas and Sandra Henderson

23   allege that Defendants Bambi Dewey and John Stalmach sexually abused Vanessa and that CCSD

24   was deliberately indifferent to the risk of teacher-student harassment and abuse in its schools.

25   Vanessa asserts six causes of action in the Second Amended Complaint: violation of Title IX, 20

26   U.S.C. § 1681(a), against CCSD; Negligence against CCSD; Fourteenth Amendment Due Process

27   claim against CCSD; Assault against Mr. Stalmach and Ms. Dewey; Battery against Mr. Stalmach

28   and Ms. Dewey; and Intentional Infliction of Emotional Distress (IIED) against Mr. Stalmach and

Ms. Dewey. Plaintiff Sandra Henderson joined in the seventh cause of action for IIED. However, in Plaintiffs' response brief to Ms. Dewey's motion for Summary Judgment, Ms. Henderson agreed to voluntarily dismiss her IIED claim; the Court allowed the dismissal of this claim in its order on the Motions for Summary Judgment. ECF No. 110. Therefore, only claims relating to Ms. Douglas are proceeding.

The Court held a hearing on both Motions for Summary Judgment on March 30 and 31, 2016. ECF Nos. 106, 107. On August 24, 2016, the Court issued an Order granting in part and denying in part the Motions for Summary Judgment. ECF No. 110. Dewey's Motion for Summary Judgment was denied in full. CCSD's Motion for Summary Judgment was denied as to Plaintiffs' Title IX and Section 1983 claims. The Court granted Defendant CCSD discretionary act immunity on Plaintiffs' negligence claim as to all acts with the exception of the alleged failure to investigate, which was permitted to proceed. Defendant CCSD filed the instant Motion for Reconsideration on September 21, 2016. ECF No. 111. The Court held a hearing on this motion on November 1, 2016.

### III.    Legal Standard

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citation omitted). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) (internal quotation and citation omitted). "Motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts." LR 59-1.

### IV.    Discussion

The Court relies on the findings of fact articulated in its Order on the Motions for Summary Judgment.

- 2 -

1

**A.  Reconsideration of the Section 1983 Claims**

2       To impose municipal liability under Section 1983 for a violation of constitutional rights,

3   Plaintiff must show: "(1) that [the plaintiff] possessed a constitutional right of which [s]he was

4   deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

5   indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind

6   the constitutional violation." <u>Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill</u>, 130 F.3d 432, 438 (9th

7   Cir. 1997) (internal citations omitted). "[T]here also much be a 'direct causal link' between the

8   policy or custom and the injury, and [plaintiff] must be able to demonstrate that the injury resulted

9   from a 'permanent and well settled practice'… A failure to train or supervise can amount to a

10   policy or custom sufficient to impose liability…" <u>Anderson v. Warner</u>, 541 F.3d 1063, 1070 (9th

11   Cir. 2006).

12       Defendants argue that the Court's finding that CCSD was the "moving force" behind

13   Stalmach and Vanessa's sexual misconduct is erroneous and warrants reconsideration. Defendant

14   argues that the Court improperly evaluated the "moving force" requirement when Stalmach was

15   never Vanessa's teacher, and CCSD had no knowledge of the relationship that developed between

16   Stalmach and Vanessa outside of school. Defendant argues that the order should be amended

17   because it fails to recognize that, based on the undisputed timeline of events, CCSD's response to

18   certain concerns reported in 2010 couldn't have been the "moving force" behind Vanessa's

19   injuries, since Stalmach and Vanessa met in 2007.

20       The Court's order, however, took into consideration a timeline of events beginning in the

21   2007-08 school year, Vanessa's 7th grade year, during which she was a student at Brown Junior

22   High. At that time, the assistant principal at Brown Junior High noticed that Mr. Stalmach always

23   had "girls hanging around" and he had a bad feeling about Mr. Stalmach's relationship with female

24   students. He had two "knock it off conversations" with Mr. Stalmach about his relationships with

25   female students. Mr. Stalmach did not receive formal discipline or notations in his personnel file

26   arising from these incidents, and CCSD then transferred Mr. Stalmach to Basic High School, the

27   same high school Vanessa ultimately graduated into in 9th grade. At Basic High School, in

28   February 2009, an assistant principal was informed of allegations that Mr. Stalmach had driven

several female students to a Denny's restaurant after school and driven them home without parental permission. At that time, Stalmach was ordered to refrain from accompanying or meeting students off campus. These actions all preceded cell phone exchanges with a student, MJ, which began in October 2009, and in response to which CCSD initiated an investigation of Stalmach in 2010. Therefore, it is not merely CCSD's response to those concerns, in 2010, which the Court deemed to be the potential "moving force" behind Vanessa's injuries.

Therefore, the Court finds that this entire chronology of events does support its earlier finding that a reasonable juror could determine that CCSD had policies or customs of failing to have clear systems for requiring principals to document conversations with teachers about possible inappropriate interactions with minors, failing to have a uniform tracking system for such information, failing to have a robust system of investigation, and failing to create an overall system whereby officials in CCSD not connected with a specific school would be responsible for viewing and acting upon an employee's conduct that spanned different schools within the same district. Furthermore, Defendants have pointed to no law, and the Court is not aware of any law, requiring Stalmach to have been Vanessa's direct teacher at the school, in order for the school to be subject to Section 1983 liability based on Vanessa's allegations against Stalmach. Vanessa met Stalmach at school, and at school the administration was aware of general problems of Stalmach's inappropriate conduct related to female students, as early as 2007. These facts are sufficient to impose potential liability on the school for a policy or practice that may have been a direct causal factor in the relationship that developed between Vanessa and Stalmach over the course of several years.

Defendant further argues that there is no causal link between CCSD policy and Vanessa's injury where CCSD had no control over Stalmach after school hours and off the school campus. Vanessa visited Stalmach at his home, and CCSD argues that it played no role in Vanessa's going to Stalmach's house and had no knowledge of that behavior.

The Court finds that CCSD's argument that its disciplinary practices "[could] not control the conduct of its staff that occurs entirely off of school premises" is not sufficient to shield it from potential liability. CCSD does not argue that Stalmach and Vanessa did not interact in school, nor

that a different disciplinary policy might have resulted in notice to Vanessa or her family regarding potential misconduct by Stalmach; all of these factors could have played a role in the development the improper relationship.  A reasonable juror could find that Stalmach's continued employment at Brown Middle School and Basic High School by CCSD created an opportunity for further grooming by Stalmach of Vanessa and other female students. A reasonable juror could find that CCSD's failure to have a robust tracking and monitoring system for teachers with repeated problems like Stalmach allowed the relationship between Stalmach and Vanessa to develop and deepen in a way that it could not have without the cover of school interaction.  Thus, the Court holds that a reasonable juror could find that CCSD had unreasonable and inadequate responses to allegations of misconduct including the continued employment of Stalmach and that CCSD's further failure to monitor and track the conduct of Stalmach could have caused injury to Vanessa by allowing this inappropriate relationship to blossom.

Defendant also argues that the Court's analysis of purported policies and customs at CCSD ignores relevant case law and makes improper conclusions based on isolated and sporadic incidents. Defendant argues that the only evidence in the record to support any assertion that CCSD had certain policies and customs are based on the facts of this case alone, and that this cannot support a finding that the school had a widespread and permanent custom. Although "liability for an improper custom may not be predicated on isolated or sporadic incidents [and] must be found on practices of sufficient duration, frequency, and consistency that the conduct has become the traditional method of carrying out policy," there is evidence in the record of different occasions, with different students, between 2007 and 2012, when there was either direct or circumstantial evidence of improper conduct by Stalmach, of which the school was made aware. LAPD v. Gates, 99 F.3d 911, 918 (9th Cir. 1990). The Court finds that this evidence could be found by a jury to be more than "isolated" or "sporadic", and is potentially sufficient for a reasonable juror to determine that an improper custom may have been in place, especially as it relates to the failure to monitor and track misconduct incidents for specific teachers across schools.

Defendant further argues that the Court did not use a heightened Section 1983 "deliberate indifference" standard, but rather seemed to apply a negligence standard, when considering the

steps taken by CCSD in response to allegations of misconduct. In <u>Gebser v. Lago Vista Independent School Dist.</u>, 524 U.S. 274, 290 (1989), the Supreme Court found that for a school district to be liable in damages under Title IX for a teacher's sexual harassment of a student, actual notice and deliberate indifference are necessary. In that case, one parental complaint concerning sexual comments made in class to two students was the only one the school district had received, and it was found to be insufficient to support a genuine issue on whether the school district had actual notice that the teacher was involved in a sexual relationship with a different student, to whom the comments in class had not been directed. In elaborating on the deliberate indifference standard, the Supreme Court characterizes it as "an official decision by the recipient [of federal funding] not to remedy the violation" and applied the "deliberate indifference" standard of Section 1983.

In its order in this case, the Court found that repeated notifications of improper conduct and potential sexual harassment, coupled with CCSD's decision not to place a formal admonition on Stalmach's record, could be found by a reasonable juror to constitute actual notice and deliberate indifference to Stalmach's sexual harassment of girls. In this case, in 2007-08, the assistant principal of Brown Middle School had two "knock it off" conversations with Stalmach about his relationships with female students; in February 2009, an assistant principal at Basic High School held an investigatory conference with Stalmach regarding allegations of his inappropriate driving of female students to Denny's and home without parental permission; in October 2009, the investigation into text messaging between Stalmach and a student, MJ, involved a handing off to the CCSD police who determined that no criminal activity had occurred related to those allegations, and then CCSD finally issued a formal admonition to Stalmach and transferred him to Dailey Elementary School. The Court's order in this case determined that a reasonable juror could find that CCSD inappropriately transferred Stalmach rather than disciplining him, after the 2007 allegations, that CCSD failed to conduct a thorough investigation into the complaints against Stalmach in February 2009, and that CCSD did not have coherent and robust system for tracking such misconduct.  Based on all of these factors, the Court finds and found that these actions by CCSD could amount to deliberate indifference. These were conscious actions by CCSD, based on

1  the Court's findings of fact, and application of the deliberate indifference standard. Therefore, the

2  Court rejects Defendant's argument that it applied an incorrect negligence standard.

3         Defendants finally argue, as to the Section 1983 claims, that the Court's conclusion that

4  CCSD did not challenge Plaintiff's claim for violation of equal protection, and on that basis its

5  failure to evaluate whether any issues of fact existed as to discriminatory intent or impact, was

6  clearly erroneous. Defendant argues that because it argued in its briefs that a policy of deliberate

7  indifference simply did not exist, it was not necessary to engage in a separate evaluation of

8  discriminatory impact or intent based on gender bias. Defendant further argues that Vanessa has

9  not provided any facts to suggest that CCSD's actions were the result of gender bias or that the

10  school's sexual harassment policy affects female students differently than male students.

11         The Court's statement in its order that Defendant did not address equal protection

12  violations, as far as discriminatory impact on students based on gender, is not contradicted by

13  CCSD's representations in its Motion for Reconsideration. CCSD raised repeated arguments that

14  on the undisputed facts, it was not deliberately indifferent to sexual harassment; the Court did not

15  find these arguments persuasive based on its factual findings. CCSD did not separately argue a

16  lack of discriminatory impact based on gender, and Plaintiff's evidence regarding repeated

17  allegations of misconduct against female students do support an allegation that female students

18  were specifically discriminatorily impacted by CCSD's policies, differently from male students.

19         Therefore, the Court rejects the arguments raised for reconsideration of its ruling on the

20  Section 1983 claims. The Court's order, however, misstated that CCSD's policy *was* a moving

21  force behind the Constitutional violation. **The Court amends its order, to state simply that a**

22  **reasonable juror *could find* that CCSD had policies or customs which were the moving force**

23  **behind the violation.**

24

25       **B.  Reconsideration of the Title IX Claim**

26         Defendant argues that the Court's Title IX analysis is flawed because it does not address

27  causation, and because CCSD did not have control over the context, outside of school, in which

28  the alleged harassment occurred, and was not on notice that disciplinary action it took in 2010 was

1    ineffective. Defendant argues that the Court did not consider the intent and purpose of Title IX,

2    which requires the recipient of federal funds to have knowledge that the discipline it provided was

3    insufficient, and imposes liability only when the entity has control over the harasser and the context

4    in which the harassment occurs.

5              The Court reiterates its Section 1983 analysis as to these arguments raised by Defendant.

6    The Court finds that repeated notifications of improper conduct and potential sexual harassment,

7    coupled with CCSD's decision not to place a formal admonition on Stalmach's record, prior to

8    2010, could be found by a reasonable juror to constitute actual notice and deliberate indifference

9    to Stalmach's sexual harassment of girls. Under the <u>Gebser</u> standard of "deliberate indifference",

10   which is applicable to both Title IX and Section 1983 claims, the Court finds that a reasonable

11   juror could determine that Defendant is liable under Title IX. 524 U.S. 274, 290 (1989).

12             Defendant also argues that the Court applied the wrong standard in evaluating Plaintiff's

13   Title IX claim, and improperly substituted its judgment for that of school administrators, to find

14   CCSD's "unreasonable" policies equated to deliberate indifference. Defendant argues that the

15   Court's order stated that a jury could find the failure to address complaints of sexual harassment

16   *unreasonable*, but that the deliberate indifference test requires *conscious disregard*, which

17   Defendant argues is a higher standard. In its order, this Court cited to <u>Oden v. Northern Marianas</u>

18   <u>College</u>, 440 F.3d 1085, 1089 (9th Cir. 2006), a Ninth Circuit opinion relying on the Supreme

19   Court's standard in <u>Gebser</u>. In <u>Oden</u>, the Ninth Circuit, analyzing whether a college "reacted with

20   deliberate indifference to [plaintiff's] allegations of sexual harassment" elaborated that "we must

21   decide whether a reasonable fact-finder could conclude that the College's response was clearly

22   unreasonable in light of the known circumstances'." <u>Id.</u> (quoting <u>Davis v. Monroe County Bd. of</u>

23   <u>Educ.</u>, 526 U.S. 629, 641(1989). "In other words, we must decide whether, on this record, one

24   could find that the College made 'an official decision…not to remedy the violation.'" <u>Id</u> (quoting

25   <u>Gebser</u>, 524 U.S. at 290). This Court derived its use of the term "unreasonable" from <u>Oden</u> in the

26   context of its application as phrased in that case. Regardless of the phrasing, the Court, in

27   evaluating the school's conduct in its prior order *did* use a "deliberate indifference" standard of

28   review to determine that CCSD could be found deliberately indifferent, and that its responses to

repeated indications of improper conduct by Stalmach could constitute "deliberate indifference". The Court in its prior order was simply referencing the 'clearly unreasonable in light of the known circumstances' phrasing of the deliberate indifference standard from <u>Oden</u>. <u>Id.</u> (citations and quotations omitted).

Moreover, the Court does find that CCSD's deliberate indifference could be found by a reasonable juror to have caused injury to the Plaintiff. Specifically, as noted in the previous order and noted here, CCSD's failure to monitor and track Stalmach's misconduct, its failure to more fully investigate earlier misconduct, its moving of Stalmach from Brown to Basic, and its failure to earlier take stronger disciplinary measures could be found to have allowed Stalmach to groom Vanessa and deepen his inappropriate relationship with her under the cover of school interaction.

Therefore, the Court rejects the arguments raised for reconsideration of its ruling on the Title IX claims.

**C. Reconsideration of the Negligence Claims**

Defendant argues that government immunity can and should apply to CCSD investigations of Stalmach, with respect to the negligence claims under Nevada state law. The Nevada Supreme Court's test for discretionary act immunity, which derives from federal law on the Federal Tort Claims Act (FTCA), confers discretionary act immunity on a governmental act or decision if it (1) involved an element of individual judgment or choice and (2) is based on considerations of social, economic, or political policy. <u>See Martinez v. Maruszczak</u>, 123 Nev. 433 (Nev. 2007). Such immunity does not attach for actions taken in bad faith. <u>Falline v. GNLV Corp.</u>, 107 Nev. 1004 (Nev. 1991). It also does not apply to acts done in violation of the Constitution. <u>Mirmehdi v. United States</u>, 689 F.3d 975, 984 (9th Cir. 2011).

The Court's order recognized that government immunity applied to all of the conduct of CCSD employees, except for the failure to investigate Stalmach. "Decisions related to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." <u>Vickers v. United States</u>, 228 F.3d 944, 950 (9th Cir. 2000). "The decisions of whether and how to retain and supervise an employee, as well as whether to warn about his dangerous proclivities, are the type of discretionary judgments

1    that the exclusion was designed to protect." <u>Doe v. Holy See</u>, 557 F.3d 1066, 1084 (9th Cir. 2009).

2    In reviewing the relevant decisions, the Court finds that the failure to investigate theory argued by

3    the Plaintiff for this case is also covered by discretionary act immunity.  <u>See</u> <u>Balser v. Dep't of</u>

4    <u>Justice</u>, 327 F.3d 903, 908 (9th Cir. 2003)(holding that allegations that a trustee was negligent in

5    general duties of "selecting, monitoring, and investigating the examiner" fell within the

6    discretionary function exception").

7           The Court reconsiders its decision and now holds that CCSD cannot be held liable for any

8    failure to investigate alleged acts of misconduct to support a negligence claim.  While the Court

9    noted in its previous order that it could not clearly ascertain what specific factual theories the

10   Plaintiff was asserting in the failure to investigate aspect of the case, the Court finds no legal basis

11   to hold out an option for Plaintiff so that she may provide further details.  <u>See</u> <u>Prescott v. United</u>

12   <u>States</u>, 973 F.2d 696, 702 & n.4 (9th Cir. 1992)(noting that a plaintiff has to assert sufficient facts

13   outside of area normally covered by discretionary function exception)(internal citations omitted).

14   The failure to investigate by CCSD for any of the stages of alleged misconduct, at least as now

15   known by the Court and asserted by the Plaintiff, will fall into the discretionary function exception.

16   **Therefore, the Plaintiff may not present a failure to investigate theory as part of her**

17   **negligence claim and her negligence claim is hereby dismissed.**

18

19   **V.      Conclusion**

20           For the reasons described above, **IT IS ORDERED** that Plaintiff's Motion for

21   Reconsideration, ECF No. 111, is **GRANTED in part** and **DENIED in part** as explained in this

22   Order.

23

24           **DATED**: <u>March 21, 2017</u>.

25

26                                                    _____

27                                                    RICHARD F. BOULWARE, II
                                                      UNITED STATES DISTRICT JUDGE

28